### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLOS GONZALES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-232** |
| **WEEKS MARINE COMPANY, LLC** | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court is a Motion for Partial Summary Judgment urged by Defendant Weeks Marine Company, Inc. ("Weeks Marine") on the issues of Jones Act Negligence and Unseaworthiness.[1] R. Doc. 47. Plaintiff Carlos Gonzales ("Gonzales") responded in opposition. R. Doc. 48. Weeks Marine filed a reply brief. R. Docs. 52. Gonzales additionally filed a sur-reply brief. R. Doc. 57. Having considered the briefing and relevant law, the Court rules as follows.

### I.    BACKGROUND

This case arises out of alleged workplace injuries suffered by Plaintiff Carlos Gonzales, who was employed by Defendant Weeks Marine. R. Doc. 11 at 2-3. Gonzales alleges that on July 3, 2021, while doing dredging work as a deck hand on a vessel in Florida for Weeks Marine, he was ordered to perform a task meant for several persons by himself, including lifting spud pins many times by himself. *Id.* Gonzales further alleges that having to perform these tasks by himself led to injuries in his shoulder, bicep, and neck, and that delayed medical treatment caused his injuries to become more severe and some became permanent. *Id.* At all times material hereto, Gonzales alleges he was aboard a vessel owned and operated by Weeks Marine, and was in the

---

[1]. The correct name of Defendant is Weeks Marine, Inc., however the caption erroneously calls it Weeks Marine Company, LLC. In its answer, Defendant clarifies this fact. R. Doc. 42.

employ of Weeks Marine, acting within the course and scope of his employment as a seaman. *Id.* Gonzales is suing for Jones Act negligence, general maritime negligence, and unseaworthiness. *Id.*

Gonzales alleges that Weeks Marine has a non-delegable duty to provide him with maintenance and cure. *Id.* at 4. He alleges that Weeks Marine has denied payment or unreasonably delayed payments for maintenance and cure, as well as paid maintenance in insufficient amount. *Id.* Gonzales claims that he has suffered further injuries and damage as a result of Weeks Marine's failure to pay maintenance and care and further alleges that Weeks Marine interfered with his medical treatment and refused to investigate or acknowledge his injuries, attempting to coerce him to continue laboring with said injuries. *Id.* Lastly, Gonzales alleges that Weeks Marine failed to have proper equipment available and failed to adequately train personnel directing their work. *Id.*

In lieu of an Answer, Weeks Marine filed a Motion to Dismiss the case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. R. Doc. 5. The Court denied that motion on July 25, 2022. R. Doc. 18. Weeks Marine then filed its Answer, asserting a number of defenses, including but not limited to failure to state a claim, Plaintiff's own fault, the existence of superseding/intervening events, and assumption of the risk. R. Doc. 42.

## II.    PRESENT MOTION

Weeks Marine filed a Motion for Partial Summary Judgment on Gonzales's Jones Act negligence and unseaworthiness claims. R. Doc. 47. On negligence, Weeks Marine argues that they satisfied their duty to create a reasonably safe work environment and that the injury Gonzales occurred was a result of his own failure to request assistance with a task that, Weeks Marine alleges, Gonzales knew would require more than one person. R. Doc. 47-1 at 17. Weeks Marine characterizes Gonzales as "an experienced mariner trained on safe lifting practices and trained to

request assistance with heavy manual lifts." *Id.* Weeks Marine points out that Gonzales "was a licensed and credentialed mariner" and had "over 20 years of experience working in the maritime industry and receiving various training from multiple companies throughout his decades in the industry." *Id.* at 5. Asserting that they do not owe him any "duty to instruct him on matters of common sense or on what he knew or should have known," Weeks Marine argues that a seaman in his position and with his experience and training should have exercised his Stop Work Authority and/or requested assistance from his supervisor, Ed Singleton, who was nearby at the time of the incident. *Id.* at 8.

On unseaworthiness, Weeks Marine argues that there is no evidence that "the crew was engaged in an improper method or work" nor that the barge "was improperly staffed or the crew incompetent." *Id.* at 22. They specifically note that Ed Singleton and Corbitt Singleton were also assigned to the crew at this time as support for this assertion. *Id.* Weeks Marine emphasizes the burden in an unseaworthiness case, that Gonzales needs to show that the unseaworthy condition was the proximate cause of his injury, arguing that he cannot meet this burden. *Id.*

Gonzales opposes the motion, arguing that this is far from a simple lifting injury case, pointing out that he had worked for Weeks Marine for only three years and in that time he was employed as a deck hand on a crew boat, not on the Weeks 148 Barge, where he was injured. R. Doc. 47 at 1. He "had performed no work for or on either the dredge or the 'bullgang' at Weeks Marine," the bullgang being the "part of the dredge crew that performs the mobilization and de-mobilization of the dredge equipment which would include moving barges." *Id.* Gonzales describes that, because of the incoming Tropical Storm Elsa, Weeks Marine reassigned him to help move the dredge into safer waters, "despite his lack of training and experience in doing this task." *Id.* at 2. Gonzales avers that typically a crane would be required to move a spud and that spuds are

3

held in place by pins which "vary wildly in size and weight." *Id.* Further, because of the engineering of the spud and pins, Gonzales argues that he would not have known the full weight of the pin until its full weight was in his arms, and that was exactly the point at which he was injured. *Id.* at 3-4. He claims he "was sent to do a job he had not done at Weeks, had not performed on this vessel before, had no training, received no safety instruction, and was given no [Activity Hazard Analysis/Job Safety Analysis] about." *Id.* at 3-4. Therefore, questions of fact exist as to the negligence claim against Weeks Marine.

As to the unseaworthiness claim, Gonzales argues that the evidence shows the Weeks 148 was in fact understaffed and therefore unseaworthy, pointing out that he was only assigned to this dredge "because no one else was available." *Id.* at 13 (citing Gonzales's Deposition, R. Doc. 48-4 at 11, pg. 35). Gonzales avers that there were only two other crew members, one of whom was a crane operator and therefore unavailable to lend assistance if necessary. *Id.* Further, relying on the deposition of the site safety and health officer, Terry Legendre, Gonzales notes that Weeks Marine's policy is to abide by a buddy system but here did not, and further "the lack of witnesses to [his] incident indicates that the buddy system was not being followed." *Id.* at 13-14. Gonzales argues this raises a significant question as to the seaworthiness, making this issue inappropriate for summary judgment. *Id.*

Weeks Marine filed a reply brief, arguing that the failure to perform a Job Safety Analysis (JSA) or Activity Hazard Analysis (AHA) is a red herring because Gonzales in his deposition stated that he has performed this task before, had seen it performed by others before, and that he knew it was at least a two-person job. R. Doc. 52 at 2-3. Weeks Marine argues that a number of the uncontested facts were not directly opposed by Gonzales in his opposition and therefore those should be deemed admitted. *Id.* at 1-2. Weeks Marine argues and that much of Gonzales's

assertions in his opposition amount to "unsupported and unsubstantiated speculation," for example his claims that he didn't believe stop work authority was "real" at Weeks Marine, or that the barge was operating with a "skeleton crew." *Id.* at 6-7. Noting that speculation, improbable inferences, and unsubstantiated assertions cannot defeat summary judgment, Weeks Marine claims Gonzales has failed to raise a genuine dispute of material fact. *Id.*

Gonzales filed a sur-reply brief to argue only that Weeks Marine's attempt to characterize one of the facts as uncontested and thus admitted addresses maintenance and cure, which Gonzales says is not an issue in this motion and he does in fact contest this (no. 36). R. Doc. 57.

## III.    APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### A.  Jones Act Negligence

Jones Act negligence and Jones Act unseaworthiness are "two separate and distinct claims." *Chisholm v. Sabine Towing & Transp. Co.*, 679 F.2d 60, 62 (5th Cir. 1982). Under the

Jones Act, a seaman's employer is liable for damages "if [the] employer's negligence is the cause, in whole or in part, of [the seaman's] injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997) (en banc) ("In their earlier articulations of §51 liability, courts had replaced the phrase 'in whole or in part' with the adjective 'slightest.'"). To recover damages, the seaman must prove that his employer breached the employer's duty of care; employers are bound to a standard of ordinary prudence for the duty of care owed to a seaman. *Id.* at 335–36. Moreover, a principle in Jones Act cases is that "cause, in fact, is still a necessary ingredient of liability." *Chisholm*, 679 F.2d at 62. "The 'producing cause' standard utilized for Jones Act negligence is the F.E.L.A. standard. The language selected by Congress to fix liability is simple and direct. Defendant must bear responsibility if his negligence played any part, even the slightest, in producing the injury." *Id.*

To show an employer's liability for Jones Act negligence, "the plaintiff must present some evidence from which the fact finder can infer that an unsafe condition existed and that the vessel owner either knew, or in the exercise of due care should have known, of the condition*." Martinez v. Offshore Specialty Fabricators, Inc.*, 481 F. App'x 942, 945 (5th Cir. 2012). "Under the Jones Act, a vessel owner is deemed negligent if he fails to exercise reasonable care to maintain a reasonably safe work environment." *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 (5th Cir. 1984). However, an employer it is not an insurer of its employees' safety and liability is not established solely upon the occurrence of an injury. *Garcia v. Murphy Pacific Marine Salvaging Co.*, 476 F.2d 303, 305 (5th Cir. 1973); *Harrison v. Seariver Maritime*, 2003 WL 342266, at *4 (5th Cir. Jan. 28, 2003). Courts apply the reasonable person standard in Jones Act negligence cases as one of the "reasonable *seaman* in like circumstances," taking into account the seaman's "experience, training, or education." *Gautreaux*, 107 F.3d at 339.

Weeks Marine points out that the Fifth Circuit has affirmed a grant of summary judgment to a Jones Act employer against a plaintiff asserting negligence and unseaworthiness following injuries sustained while lifting a heavy object. *Underwood v. Parker Towing Co.*, 2022 WL 1553527 (5th Cir. May 22, 2022). In *Underwood v Parker Towing Co.*, the plaintiff injured his back after lifting a fifty-seven-pound pump on his own. *Id.* at *1. He asserted negligence arguing that his employer should have but did not set a cap on the amount of pounds one can lift on their own. *Id.* at *2. The trial court granted summary judgment to the employer and the Fifth Circuit affirmed, reasoning that it was the lifting technique the plaintiff employed and not the lack of a weight maximum. *Id.* at **2-3. Reasoning that the employer had provided safe lifting techniques to its employees, and that the plaintiff knew these techniques, the Fifth Circuit found that the employer "had no reason to know there was a danger" to the plaintiff. *Id.* at *3. The court reasoned that the employer relied on the plaintiff to "exercise reasonable care" and that this plaintiff "with training on how to safely lift objects and ten years of experience routinely dealing with similar equipment should have realized if this task was beyond his capacity." *Id.* at *2. The plaintiff "could have told his captain or asked for assistance, but he did not." *Id.* Therefore, summary judgment in favor of the employer was proper. *Id.* at *3.

Weeks Marine also analogizes this case to *Williams v. International Construction Group, LLC*, a Jones Act negligence and unseaworthiness case where this Court granted summary judgment to the employer. 2011 WL 1116312 (E.D. La. Mar. 23, 2011) (Fallon, J.). In Williams, the plaintiff claimed that there was insufficient crew to help him with a heavy lifting task, he lacked the required equipment to perform the task, and failure to be properly instructed. *Id.* at *4. This Court found that the plaintiff's deposition however contradicted these assertions and that there were in fact three other crew members nearby, none of whom he asked for assistance despite

acknowledging that he should have done so. *Id.* Further, this Court found the plaintiff could have done this task alone, that nothing indicated it must require assistance, and that this fact belied the plaintiff's claim that other equipment was necessary. *Id.* Lastly, on proper instruction and training, this Court noted that the plaintiff had attended "at least five different safety orientation programs and policies, one of which being [employer's]" so any claim of failure to train was unpersuasive. *Id.* Therefore, this Court granted the employer summary judgment. It is important to note that following an improper order is not necessarily contributory negligence. *See Ledet v. Smith Marine Towing Corp.*, 455 F. App'x 417, 422 (5th Cir. 2011) (citing *Williams v. Brasea, Inc.*, 497 F.2d 67, 73 (5th Cir. 1974)); *Knight v. Kirby Offshore Marine Pacific, L.L.C.*, 983 F.3d 172, 177-79 (5th Cir. 2020) (distinguishing between general and specific orders and examining the jurisprudence on contributory negligence in the Jones Act context).

## B.  Jones Act Unseaworthiness

"There is a more demanding standard of causation in an unseaworthiness claim than in a Jones Act negligence claim." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988). "To establish a claim for unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it was intended to be used.'" *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir.2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). Seaworthiness requires reasonable fitness, not perfection; the ship need not be one that will weather every conceivable storm but it must be reasonably suited for its intended service. *Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336, 339 (1955). Unseaworthiness arises in a variety of circumstances, for example a vessel's "gear might be defective, her appurtenances in disrepair, her crew unfit. The number of men assigned to perform a shipboard task might be insufficient. The

method of loading her cargo, or the manner of its stowage, might be improper." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). Unseaworthiness thus includes the situation where an insufficient number of seamen are assigned to do the job in question.

A plaintiff asserting unseaworthiness "must prove that the unseaworthy condition played a *substantial* part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence" of the unseaworthy condition. *Johnson*, 845 F.2d at 1354 (emphasis added). This is in contrast to the negligence standard, which requires a plaintiff to demonstrate that the employer's negligence "is the cause, in whole *or in part*" of the injury. *Gautreaux*, 107 F.3d at 335 (emphasis added).

## IV.   DISCUSSION

Weeks Marine presents this case as an open and shut heavy lifting maritime matter but Gonzales persuasively disputes that characterization. The Court finds *Underwood* or *Williams* distinguishable from the facts at bar and accordingly these cases do not require a grant of summary judgment in this matter. Aside from the fact that the Court is unconvinced at this juncture that this matter involves lifting, there are several important distinguishing facts in those cases. For example, in *Underwood*, the court considered the fact that the plaintiff had regularly performed the task at hand and further that he was aware of the workaround strategy he employed when he was injured, as was the employer, therefore the employer was not reasonably put on notice that the condition posed a danger. In this matter, Gonzales avers that he was not usually aboard the Weeks 148 and had not performed this particular task in years, certainly not for Weeks Marine.

In *Williams*, this Court relied on that plaintiff's having attended at least five safety and training sessions, that there were several individuals around from whom he could have asked for help, and the task in and of itself was not one that always required multiple people. Here, the task

requires multiple people, as acknowledged by both parties, there was only one other person who may have been available to assist Gonzales (but the parties disagree as to whether he was available to do so or not had he been asked) and Gonzales has attended no safety or training sessions as it pertains to this task. These facts distinguish those cases from the matter at bar and the Court does not find that they mandate a finding for Weeks Marine.

There are too many questions of fact as to Gonzales's negligence claim. For example, the Court has concerns regarding Gonzales's "conscription" to the Weeks 148 vessel given his experience and job as a deck hand on a crew boat. The Court finds that questions of material fact exist as to whether Gonzales was in fact trained and experienced on the task at hand. Gonzales avers that he had not done this task in years and not for this employer. Additionally, Weeks Marine asserts that Gonzales himself was negligent and partially at fault, which is a factual inquiry that the Court cannot decide at this time. Further, given a plaintiff's featherweight burden in Jones Act negligence, these questions preclude summary judgment for Weeks Marine at this time.

Similarly, as to the unseaworthiness claims, the Court finds that there are questions of material fact as to the issue of adequate staffing levels. Gonzales's opposition and his deposition, attached as an exhibit in these filings, raise the question of whether three, or two if the crane operator was in fact operating the crane at the time, was sufficient to prep the vessel in advance of the storm. To answer this question requires an inquiry into the storm conditions, the level of preparation necessary, and the decision making that went into conducting that preparation.

For the foregoing reasons, Weeks Marine's Motion for Partial Summary Judgment on Jones Act Negligence and Unseaworthiness is **DENIED**.

New Orleans, Louisiana, this 7th day of November, 2023.

_____
United States District Judge