UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLOS GONZALES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-232** |
| **WEEKS MARINE COMPANY, LLC** | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court is a Motion for Partial Summary Judgment urged by Defendant Weeks Marine Company, Inc. ("Weeks Marine") on Certain Non-Pecuniary Damages and Punitive Damages.[1] R. Doc. 49. Plaintiff Carlos Gonzales ("Gonzales") responded in opposition. R. Doc. 55. Weeks Marine filed a reply brief. R. Docs. 64. Having considered the briefing and relevant law, the Court rules as follows.

### I.    BACKGROUND

This case arises out of alleged workplace injuries suffered by Plaintiff Carlos Gonzales, who was employed by Defendant Weeks Marine. R. Doc. 11 at 2-3. Gonzales alleges that on July 3, 2021, while doing dredging work as a deck hand on a vessel in Florida for Weeks Marine, he was ordered to perform a task meant for several persons by himself, including lifting spud pins many times by himself. *Id.* Gonzales further alleges that having to perform these tasks by himself led to injuries in his shoulder, bicep, and neck, and that delayed medical treatment caused his injuries to become more severe and some became permanent. *Id.* At all times material hereto, Gonzales alleges he was aboard a vessel owned and operated by Weeks Marine, and was in the

---

[1]. The correct name of Defendant is Weeks Marine, Inc., however the caption erroneously calls it Weeks Marine Company, LLC. In its answer, Defendant clarifies this fact. R. Doc. 42.

employ of Weeks Marine, acting within the course and scope of his employment as a seaman. *Id.* Gonzales is suing for Jones Act negligence, general maritime negligence, and unseaworthiness. *Id.*

Gonzales alleges that Weeks Marine has a non-delegable duty to provide him with maintenance and cure. *Id.* at 4. He alleges that Weeks Marine has denied payment or unreasonably delayed payments for maintenance and cure, as well as paid maintenance in insufficient amount. *Id.* Gonzales claims that he has suffered further injuries and damage as a result of Weeks Marine's failure to pay maintenance and care and further alleges that Weeks Marine interfered with his medical treatment and refused to investigate or acknowledge his injuries, attempting to coerce him to continue laboring with said injuries. *Id.* Lastly, Gonzales alleges that Weeks Marine failed to have proper equipment available and failed to adequately train personnel directing their work. *Id.*

In lieu of an Answer, Weeks Marine filed a Motion to Dismiss the case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. R. Doc. 5. The Court denied that motion on July 25, 2022. R. Doc. 18. Weeks Marine then filed its Answer, asserting a number of defenses, including but not limited to failure to state a claim, Plaintiff's own fault, the existence of superseding/intervening events, and assumption of the risk. R. Doc. 42. This matter is set for a jury trial on November 27, 2023.

## II.    PRESENT MOTION

Weeks Marine filed a motion for partial summary judgment urging the Court to dismiss Gonzales's claims for certain non-pecuniary damages and punitive damages and/or attorneys' fees related to his claim for maintenance and cure. R. Doc. 49. Weeks Marine urges summary judgment as to only certain claimed damages: (1) the non-pecuniary damages for past and future mental anguish as well as past and future bodily impairment and disfigurement, arguing that as a matter

of law these damages are barred in Jones Act cases asserting negligence and unseaworthiness; and (2) the punitive damages and/or attorneys' fees related to Gonzales's claim for maintenance and cure, arguing that Weeks Marine did not act arbitrarily, capriciously, or in bad faith to deny or delay such payment and treatment, and therefore Gonzales is not entitled to these damages. R. Doc. 49-1 at 7. Gonzales in his opposition does not dispute the fact that the law bars certain non-pecuniary damages, such as his claims for mental anguish and his claims for bodily impairment/disfigurement, and therefore agrees to not pursue these categories of damages and amend his complaint, if the Court permits, to strike these claimed damages. R. Doc. 55 at 3-4. Therefore, the sole issue before the Court in this motion is the question of punitive damages relating to Gonzales's claim for maintenance and cure.

Weeks Marine argues that to seek punitive damages for maintenance and cure, a plaintiff must show that their employer acted arbitrarily, capriciously, and with bad faith, and that Gonzales cannot satisfy this heightened burden. R. Doc. 49-1 at 12-15. Recounting the chronology following his injuries, Weeks Marine emphasizes that the same day it arranged for Gonzales to go to a clinic for immediate evaluation, that three days later he returned to that clinic for further diagnostic testing and then three days after that he returned to go over the results of that testing, all without delay or obstruction by Weeks Marine. R. Doc. 49-1 at 15-16; R. Doc. 59-1 at 2-3. Weeks Marine argues that the several week delay between those visits and the appointment with Dr. Crenshaw was to permit Gonzales to be seen closer to his home in Jacksonville and does not rise to the level of bad faith that warrants punitive damage. R. Doc. 49-1 at 15. Additionally, any delays in the surgery itself was a result of Gonzales's own blood pressure issues requiring a rescheduling of that surgery. *Id.* None of this, Weeks Marine argues, warrants punitive damages.

The only medical care Weeks Marine declined to cover for Gonzales is the treatment and surgery for his neck. *See id.* at 16-19. When Gonzales first requested they pay for neck surgery, Weeks Marine recounts that it sought to investigate, as they are entitled to under the law, to confirm that the injury was entitled to cure. *Id.* at 17. Weeks Marine asked Gonzales to undergo an Independent Medical Exam ("IME") to aid in its investigation and that physician determined that this neck injury was not connected to the incident on July 3, 2021 that allegedly injured his bicep and shoulder. *Id.* Weeks Marine avers that it requested additional medical records from Gonzales which it then sent to the IME physician to check "if his opinion had changed with respect to Plaintiff's alleged neck complaints." *Id.* at 17-18. That physician, Dr. Robert, confirmed to Weeks Marine that his opinion was unchanged and he still thought the neck injury was unrelated. *Id.* Weeks Marine consulted another IME report conducted by Dr. Haddad who concurred that the neck injury was unrelated and ultimately Weeks Marine determined that "any neck issues of which Plaintiff complains did not occur or manifest while in the service of any vessel owned or operated by Weeks Marine." *Id.* at 18.

Gonzales refutes this characterization and chronology, arguing that Weeks Marine delayed treatment, including by making him wait in a hotel in Sarasota for three days for his first MRI scan and then ultimately delaying his appointment with Dr. Crenshaw by several weeks because they were finishing the Sarasota job up and would not connect him with care in that area. R. Doc. 55 at 6. He argues this delay is "not proper." *Id.* at 7. His second argument for punitive damages is that Weeks Marine unreasonably refused to cover his neck surgery. *Id.* He argues that courts require more than an employer's sole reliance on IME reports and that in this case, that is all Weeks Marine relies upon to deny his treatment. *Id.* at 7-8. He describes IMEs as "anything but independent," arguing that Weeks Marine cherrypicked doctors who would provide it the finding it desired. *Id.*

In reply, Weeks Marine argues that a bare assertion that the delayed treatment "is not proper" without facts to support this conclusion is not enough to create a dispute of material fact. R. Doc. 59-1 at 2-3. Admitting that there was a delay of 10 days until Gonzales could see Dr. Crenshaw on July 13, Weeks Marine notes that the case law requires more to award a plaintiff punitive damages. *Id.* On the neck surgery, Weeks Marine reiterates that Gonzales has not met the burden required to show that they acted arbitrarily, capriciously, or in violation of "the dictates of humanity." *Id.* at 4. Arguing that calling their conduct improper or unreasonable, without more, does not prove the "callous indifference" the law requires. *Id.* Additionally, Weeks Marine refutes any allegation of cherry-picking, noting that it paid for shoulder surgery on the basis of Dr. Haddad's IME report. *Id.* at 5-6.

### III.     APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

Under general maritime law, a shipowner has a duty to provide maintenance and cure to a seaman who becomes ill or injured while in the service of the ship. *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979); *Lovell v. Master Braxton, LLC*, No. 15-3978, 2016 WL 6819043, at *5 (E.D. La. Nov. 18, 2016). "Cure" is the payment of medical services until the seaman reaches maximum medical improvement. *Pelotto*, 604 F.2d at 400. "Maintenance" provides a seaman with "food and lodging of the kind and quality he would have received aboard the ship." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002). "To establish a claim for maintenance and cure, a seaman need only show that his injuries occurred while in the service of the vessel." *Lovell*, No. 15-3978, 2016 WL 6819043, at *5; *Boudreaux*, 280 F.3d at 468. Recovery is permitted for injuries or illnesses that predate the seaman's employment "unless that seaman knowingly or fraudulently concealed [their] condition from the vessel owner." *Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212 (5th Cir. 2006). An employer who receives a claim for maintenance and cure is "entitled to investigate and require corroboration of the claim before making payments." *MNM Boats, Inc. v. Johnson*, No. 99-30805, 2001 WL 85860, at *1 (5th Cir. Jan. 22, 2001).

Punitive damages are available for an employer's "willful and wanton disregard of the maintenance and cure obligation." *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009). Courts awarding punitive damages for failure to pay maintenance and cure demand a showing that the employer's actions were more than unreasonable; the conduct must be "arbitrary and capricious" which courts describe as exhibiting "callousness and indifference to the seaman's plight." *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 383 (5th Cir. 2012) (quoting *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995)). The Fifth Circuit "has

described this 'higher degree of fault' as 'egregiously at fault,' 'recalcitrant,' 'willful,' and 'persistent.'" *Id.* (quoting *Morales*, 829 F.2d at 1358).

Conduct that may warrant punitive damages includes negligent investigation of a claim, terminating benefits upon the plaintiff's hiring counsel, and/or refusing to reinstate benefits "following medical diagnosis of an ailment not previously determined." *Great Lakes Dredge and Dock Co. v. Martin*, No. 11-0405, 2012 WL 3158870, at *3 (E.D. La. Aug. 3, 2012) (Lemelle, J). A two-month delay in providing maintenance and care was found to be reasonable and the court did not award punitive damages when an employer was notified and then conducted a reasonable investigation before paying the plaintiff. *Woodson v. Rentrop Tugs, Inc.*, No. 12-1347, 2013 WL 828314 at *5, (E.D. La. Mar. 6, 2013) (Berrigan, J.).

## IV.   DISCUSSION

As the parties explain, the basis for Gonzales's claim on punitive damages is rooted in two alleged categories of misconduct: (1) alleged delay of medical treatment, specifically the three-day wait for the MRI scan in July 2021 and the ten-day wait for Dr. Crenshaw's appointment in Jacksonville, Florida in July 2021; and (2) the failure to pay for the neck surgery. The standard for punitive damages is a higher standard than simply unreasonable, and Gonzales must present facts that prove that the delays for care resulted from an arbitrary, capricious, or callous indifference of his employer. The record is clear that Weeks Marine arranged for immediate, day-of care at the urgent care clinic and that three days later Gonzales underwent diagnostic scans. He returned three days later to go over the results of those scans, totaling three visits to the urgent care within those ten days. There is no dispute that Weeks Marine paid for this care.

The parties dispute the immediacy within which Gonzales was authorized to see Dr. Crenshaw. Weeks Marine argues that it authorized this care as early as July 13, 2021 and points to

the declaration of its Corporate Claim Manager, Theresa Olivo, who says she was in contact to arrange the appointment as early as July 13. *See* R. Doc. 49-7 at 3, 11. In her declaration, Ms. Olivo avers that she gave Gonzales the option of where he would like to receive care and that he elected Jacksonville. *Id.* at 2. Gonzales however expresses frustration with delays to get treated, claiming the reason for the delay was to permit Weeks Marine to finish the job in Sarasota and that is why Weeks Marine selected a doctor in Jacksonville. *See* R. Doc. 55 at 6-7. He disputes that Weeks Marine arranged for this care within ten days, arguing instead that the authorization came through on August 2, 2021. *See* R. Doc. 49-5 at 8. While courts have found that a two-month delay does not demonstrate arbitrary and capricious behavior, it is important to note that such a finding will depend on the nature of the injury. A two-month delay for internal bleeding would clearly be concerning. The Court observes that, as stated in the medical records attached as exhibits to this motion, Dr. Crenshaw diagnosed Gonzales in his initial visit on July 29, 2021 with various tears in his shoulder and bicep and that Gonzales reported relatively high levels of pain. *See* R. Doc. 49-5 at 6.  While the bar is high for punitive damages, requiring a showing of bad faith or arbitrary or capricious conduct, the Court will not grant summary judgment at this time as to the issue of delayed treatment and will await further factual development on the relationship between the delays and the injuries sustained.

The Court now turns to the neck surgery. An employer is entitled to conduct a reasonable investigation into a claim for maintenance and cure. The requirement that Gonzales undergo an IME is not unreasonable, let alone a wanton, willful, or callous act, and the Court is persuaded that the fact that Weeks Marine conducted the investigation itself does not entitle Gonzales to punitive damages. However, the Court notes that Gonzales disputes many of the facts on which Weeks Marine relies to demonstrate the reasonableness of its investigation and the conclusions therefrom.

The Court finds summary judgment inappropriate on the issue of punitive damages relating to the neck surgery. Questions of material fact exist as to which medical records and reports Weeks Marine relied upon to determine the neck injury is unrelated and which surgeries were in fact authorized and approved for Gonzales and when. *See* Plaintiff's Statement of Material Facts, R. Doc. 55-3 at ¶ 7 (disputing the second shoulder surgery was authorized).

As Plaintiff Gonzales represents he no longer intends to seek non-pecuniary damages relating to mental anguish and scarring/disfigurement, see R. Doc. 55 and 3-4, the Court will grant this motion for partial summary judgment as to that issue. Accordingly, for the foregoing reasons, Weeks Marine's Motion for Partial Summary Judgment on Certain Non-Pecuniary Damages and Punitive Damages is GRANTED in part, as to the non-pecuniary damages, and DENIED in part as to the punitive damages pending further factual development. The Court reserves Weeks Marine's right to bring a Rule 50 Motion on punitive damages.

New Orleans, Louisiana, this 7th day of November, 2023.

_____
United States District Judge